Judge Nicholas
delivered the Opinion of the Court.
Boyd, being the equitable proprietor of a house and lot, as assignee of a bond for the title, sold the house and lot to Couchman, and gave a bond for the conveyance of the title when the purchase money should be paid. Gouchman took possession and has held it ever since. The last of the purchase money was collected by execution the 25th December, 1825. Couchman instituted suit on the bond, the 5th September, 1826, and obtained judgment against Boyd for failing to convey. On the 19th of September, 1826, before verdict or judgment, Boyd obtained the title, and then executed and tendered Couchman a deed for the property, which he' refused to accept. Couchman was aware of the situation of the title at the time of his purchase. It does not appear that he ever made any demand for a conveyance, or that he had been prejudiced in any way by reason of his not having received it before the tender made by Boyd. Shortly after the rendition of the judgment, Boyd filed his bill for injunction against the judgment, and for a speoific enforcement of the contract. It is inferrable from the answer and proof, that between the payment of the purchase money, and the institution of the suit at law, Boyd had apprized Couch-man of his readiness and willingness to convey the title, .at any time that he might desire it, and it does not appear that the latter made any objection to receiving it, or insisted upon an immediate conveyance.' He stated to a witness, that he could obtain .it at any time from Boyd. The circuit court granted the relief prayed for, and Couchman has appealed.
Upon the state of case here presented, Boyd could *289 have compelled Couchman to take the title, provided he had applied to the chancellor for that purpose, at any time before the judgment at law, as was determined in Woodson vs. Scott, 1 Dana, 470.
Toe only question, therefore, is whether the permitting judgment to go against him, before he filed his bill, has so altered the attitude of the parties as to preclude that relief.
Several of the cases decided by this court, speak of that as an important, if not a controlling circumstance upon the question of specific performance at the instance of the vendor. It, no doubt, should in the general be so treated. But some exceptions to the rule have been heretofore recognised, and there may still be others.
It was decided in Woodson vs. Scott, that the bare fact of suit having been brought on the bond before tender of a conveyance, was not of itself sufficient to prevent a1 specific performance; and we are not aware of any case in which it has been held, that the judgment would preclude the vendor from relief, where the tender was made before judgment. In none of the cases where relief has been refused, had the purchaser been placed in the wrong by a tender and refusal to accept before judgment.
The purchaser’s remaining quietly in possession, making no demand of a deed, and doing no act indicative of a determination to rescind the contract, is well calculated to lull the vendor into security, and induce the absence of that prompt diligence, in the tender of a deed, which might otherwise be expected. This effect is still more apt to be produced, where, as here, the vendor had apprized the purchaser of his readiness and willingness to make the deed at any time when it would suit his convenience to receive it, without any complaint made of the delay that had then occurred, or demand for an immediate execution of the deed. It would be rigorous in the extreme, to say, that the vendor had been culpably negligent in permitting, under such circumstances, nine months only to elapse, before he made the tender. It may therefore be well assumed *290 at the time the deed was tendered in thi's case, Boyá was not in culpable default: Couchman ought to have received it.. A co.urt of equity would, if then applied to, have compelled him to receive the deed. The court could only do this on the ground, that, at the time of the tender, it was his duty to have accepted the deed, and this duty could only be enforced, because it was the right of the other to demand its enforcement. Though such tender is no answer to the action at law on the bond, yet, according to the view which equity takes of the matter, the attitude and rights of the parties are then fixed ; and it surely cannot be competent for the vendee to absolve himself from that attitude, with its accompanying duties, by any act dependent on, his own volition — whether his own merely ,or that of a court of law obtained at his instance and through his procurement. The judgment thereafter rendered by his procurement, would be in direct violation of his then existing obligations and duties towards the vendor, if it were to have the effect of releasing him from those obligations and duties. The judgment so obtained, cannot be successfully relied upon by him, as an advantage fairly and properly obtained, of which equity has no right to deprive him. An advantage that is obtained in violation of our equitable duties towards others, can never be viewed by a court of equity as fairly and properly obtained. On the contrary, to relieve agaiBst legal advantages, obtained in derogation of equitable duties, is the broadest and most comprehensive head of equity jurisdiction and power.
The court therefore did right in restraining Couch-man from recovering back the purchase money, and in compelling him to take the title. But as he was in no default at the time he brought his suit at law, he had an equitable, as well as legal right, to proceed in that suit, for a recovery to the extent of his costs at law, and he should not have been restrained therefrom.
Decree reversed, with costs, and cause remanded, with instructions to modify the decree, so far as to dissolve the injunction with damages, to the extent of the cost of the action at law.