Judge Ewing,
delivered the' Opinion, of1 the Churt..
Adin Starke sold to Samuel Brown, a house- and lot in: Taylorsville, for six hundred and fifty dollars, to be paid by instalments;; and on the 16th of September, 1829, executed his bond for a title, to be- made on the 25th off December, 1831; at the same time, Brown executed his notes to Starke for- the consideration — the note for the; last instalment being-made-payable on the same day the bond for the title fell due. The- consideration having-been paid, except the last instalment, which was for two-hundred dollars, and the title not being made, Samuel. Brown assigned the bond to J ames- H. Brown, on the 31 st of December, 1831; who- commenced suit at law thereon, on the 5th day of January, 1832; and at the-February term of the same year, recovered judgment against Starke, for six hundred and fifty dollars, with interest from the 25th of December, 1831-
On the 9th day of February, 1832, Starke-filed, his bill against Samuel and James H. Brown, enjoining tile judgment at law; in which he alleges his readiness and willingness to convey the title according' to the condition of his bond, but that he was prevented from doing so by Brown’s absence from his residence; that he had no knowledge of the assignment to James H. Brown, until *317 after the writ was issued at law and served on him; and immediately upon being advised of the assignment, he offered to convey, but James H. Brown refused to receive the title. He- also alleges, that possession of the house and lot has been, and is still held by the Browns. And after setting out various reasons, which are- unsupported in proof, for failing to file his bill before judgment at law, he exhibits and tenders a deed, which appears to have been executed after suit brought.
Where a purchaser of laud, by executory contract,resorts to evasions If contrivances by which he prevents the.vendorfromeom plying, and then recovers judgment on the titlei bond — the vendor may be re lieved in chance ry, by showing, that he was and! is able to make a good title, but. was prevented by the purchaser.
The- answers put the complainant upon the proof of his equity.
The Circuit Court was of opinion, that Starke was entitled to- relief, and perpetuated the injunction. From this decree, the Browns have appealed to this Court.
The proof will justify the conclusion, that Starke went to the residence of Samuel Brown, on the day before his bond fell due, with the intention of making him a conveyance, and also that he went again once or twice, within a few days thereafter, with the same intention; that Brown was from home and continued from home several days, and he could not get to see him. It does not appear that he had any knowledge of the assignment to James H. Brown until after the writ was sued out, in his name, at law. That James II. Brown went with the sheriff to Starke’s house, having the writ in his pocket, and Starke being from home, he pursued him to a blacksmith shop, in the neighborhood, where he offered to pay him two hundred dollars, the balance of the consideration, if Starke would make him a good title to the lot; that Starke professed a willingness to make him a conveyance and receive the money, and deliver him the note, if he would return with him to his house, where the note was. Brown complained that his title was not good; that it was encumbered with the dower claim of Mrs. Shelburne, and put up his money, and pulled the writ out of his pocket, and delivered it to the sheriff, who immediately executed it on Starke.
If Starke’s title had been good, and free from incumbrance, we would feel no difficulty in affording him relief. He seems to have been willing to comply with his *318 contract promptly; and there is pretty strong evidence* t0 mfer, that Samuel Brown- was anxious to get clear of the contract, and probably kept out of the way about the time the title was to have been made, to prevent as conveyance, and gain some legal advantage.
A vendor oOand, anted to make a conveyance, and comes mtochaneery to enforce the agreement, he is prepared to iimrn* lingness to conhehaTlsnot sufficient. And, if ment against him for a failure to showYhathiTdeí fault was caused by the other party.
But it will not suffice for a vendor, seeking, as cornplainant in chancery, to get clear of a judgment at law against him, to say, that he was idllins; to convey. He ° , . , , " , must have been also ready to do so. And to be ready,, pe must have a good and valid title, free' from incumbrance. H or a covenant to make a good and sufficient deed, does not mean merely a conveyance in point of form. That would be a covenant without substance. It means an operative conveyance, which carries with it a good title to the lot. John. Rep. 613, Clute vs. Robinson. If Stark was unprepared to pass such a title, he was as-much in default as if he had been unwilling to convey. Had Brown been at home, and a conveyance without good title had been tendered to him, he would not have been bound to receive it. To entitle him to the aid of the Chancellor, who has not before had possession of the cause, in arresting from the defendants a legal advantage fairly obtained, he must show, that he has not been in default; or if in default, it has been caused by the act of the defendants. Lit. Sel. Cases, 129, Grundy's and Wilson's Heirs vs. Ford's Executors; 4 Lit. Rep. 200, McKinley vs. Butler; 3 Monroe, 49, Oldham vs. Woods; 3 J. J. Marshall, 55.
It appears from the proof in this cause, that the complainant had no legal title to the lot until long after the recovery at law against him.
It seems that Richard Taylor laid off the town of Taylorsville, and sold out the lots. That, by an order of the County Court of Shelby, trustees were appointed, who conveyed the lot in contest to Richard Basye, who conveyed to Taylor Basye, who conveyed to Leander Murphy, who re-conveyed to Taylor Basye, who conveyed to Spencer and Paschal Shelburne, who conveyed to the complainant. That there was no order of any County Court, or act of the Legislature, es *319 toblishing said town, until January, 1833, when an act was passed establishing the town, and vesting the title in trustees, and directing them to make to the purchasers deeds of confirmation for the lots theretofore purchased. Session Jlcts of 1832 — 3.
A vendor seeking relief against a judgment on his title bond, cannot rely on the delinquency of his adversary, as a defence; he must show that hewas not in default himself.
To pass the title or dower right of a feme covert in Band, the deed must be sealed •and delivered by her,as well as by :her husband; a certificate of her ‘acknowledgment on the husabnd’s deed, which she has not in fact executed,is of no avail.
*319 It also appears that, at the commencement of the suit at law, the said lot was encumbered with the dower of Nancy Stalliard, late Basye, and Lucy Shelburne, whose husbands’ deeds of warranty had conveyed the lot. And the former incumbrance was not removed until long after the judgment was recovered; and an attempt at removing the latter was not made until after suit was commenced at law.
From which, it appears evident, that the complainant was in default. And there is no evidence in the cause, that he was lulled into repose, or induced by any act on the part of the defendants, to postpone perfecting his title. But his failure has proceeded from sheer ignorance or negligence on his own part; neither of which can furnish any ground for the interposition of the Chancellor in his behalf. 4 J. J. Mar. 429, Bartlett vs. Blanton; 3 J. J. Mar. 55.
The case of Woodson’s Administrators and Heirs vs. Scott (1 Dana, 470) and Couchman vs. Boyd (2 Dana, 288) are not analogous to the present. In the first, a bill was filed before the judgment at law was recovered, and the proceedings at law enjoined. In the latter, a tender of the deed was made before a recovery of judgment at law. And in both cases, the complainants had good titles to the property.
But it is urged, that the defendant was in default in failing to pay the last instalment, and that his default was a sufficient excuse for the complainant. We cannot think so. A complainant, asking the extraordinary aid of the Chancellor, to take from the defendant a legal advantage, must not rely on the default of his adversary, but upon his own freedom from negligence or default. Besides, the defendant was not equitably bound to pay, if the title was not good.
But the complainant’s title was not only defective, and incumbered with dower claims at the rendition of *320 the judgment, but said incumbrance, in part, was not re* moved at the rendition of the decree.
A potential claim to dower is not such an incumbrance • on the land, as will, in all cases, preclude a decree in favor of a vendor seeking to enforce his contract. But in this case, as thereis a judgment at law against the vendor, on his covenant, which he seeks to enjoin, and the dower claim still exists, at the hearing, he cannot be relieved.
In a suit by a vendor,to enjoin a judg’t on his covenant to con-f^lg’^flhat'oh!! jeet, yet, as unney,ronts^pro&^ waste, and immanera connecu Jud.s" have a decree for a set-off, of any grounds.
*320 An attempt was made to procure the relinquishment of the dower of Mrs. Shelburne, but the attempt, as we conceive, was wholly inoperative. The deed from her husband was executed on the 9th day of August, 1827, and properly recorded. She was not a parly to said deed; nor was her name or seal put to it. On the 21st day of January, 1832, she appeared before the clerk, and, on privy examination, in the form prescribed by the act of 1796, (1 Stat. Law, 440) acknowledged said deed to be her act and deed, and that she wished not to retract it &c.
The statute directs, “that where husband and wife shall have sealed and delivered a writing purporting to be a conveyance of any estate or interest” &c. — “and an acknowledgement be made by the wife, upon privy examination, that the same is her act and deed &c, and acknowledged or proved to be the act and deed of the husband, and recorded &c, that the same shall not only be sufficient to convey or release any right of dower thereby intended to be conveyed or released, but be as effectual for every other purpose as if she were an unmarried woman.”
To comport with the requisitions of this statute, it will be perceived, that it was necessary that the wife should have sealed and delivered the deed together with the husband, and then an acknowledgment of the same as her act and deed would have had some operative effect. Such sealing and delivering not having been made by her, -or pretended to have been made, the acknowledgement of the same as her act and deed, cannot make it so, or make it effectual to pass her dower or inheritance.
We do not wish to be understood as deciding, that a potential claim to dower unrelinquished, in all cases and under all circumstances, will present an insuperable bar to a specific execution of a contract. But in the present case, that, together with a total want of title at the rendition of the judgment, opposes an insurmountable objection to the relief asked by the complainant.
But the unpaid instalment, as well as the rents and . , ' . , r waste, ii any, is connected with the judgment, and alter *321 deducting the value of the lasting and valuable improvements, should be set off against so much of the same as their amount will cover.
it is therefore decreed by the Court, that the decree of the Circuit Court be reversed, the cause remanded, that the rents and profits and waste be ascertained by commissioners, and upon a surrender of the note for the last instalment, a decree be rendered allowing the set-off as above directed, and that the injunction be dissolved as to the balance of the judgment at law.